UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY

CASE NO.:

SEAN THOMAS FLYNN, individually
and as Personal Representative of the Estate
of MOLLIE CATHERINE GHIZ-FLYNN

      Plaintiff,

v.

M/V SOUTHERN COMFORT, Identification no.:
XYU7748FH788, Registration no.: DO930158, her engines,
tackle, and appurtenances, *in rem*, FLORIDA SCUBA CHARTERS,
INC., DUSTIN MCCABE, KRISTY MCCABE, and
NPBM, LLC a/k/a NORTH PALM BEACH MARINA,

      Defendants.

_____/

## VERIFIED COMPLAINT TO ENFORCE A MARITIME LIEN FOR DAMAGES ARISING FROM A MARITIME TORT UNDER 46 U.S.C. § 31301(5)(B)

COMES NOW, Plaintiff, SEAN THOMAS FLYNN, individually and as Personal Representative of the Estate of MOLLIE CATHERINE GHIZ-FLYNN, by and through undersigned counsel and hereby sues Defendants and states as follows:

## THE PARTIES, JURISDICTION, AND VENUE

1.    This case involves a personal injury and negligence claim arising under the General Maritime Law of the United States and is thus within this Court's Admiralty and Maritime jurisdiction within the meaning of U.S. Const. Art. III § 2, 28 U.S.C. §1333, Fed. R. Civ. P. Rule 9(h), Supplemental Rule C and Local Admiralty Rule C.

2.      Pursuant to 46 U.S.C. § 31301(5)(B), Plaintiff's *in rem* claim is for the death of MOLLIE CATHERINE GHIZ-FLYNN ("Decedent") and for the bodily injuries Plaintiff suffered individually while lawfully aboard the *M/V SOUTHERN COMFORT* on the navigable waters of this District on March 29, 2020.

3.      At all material times, Defendant M/V SOUTHERN COMFORT, *in rem*, (the "Vessel") is a 1988 48' Ocean Yachts Cruiser,  Identification no.: XYU7748FH788, Registration no.: DO930158.  The Vessel is currently docked in North Palm Beach, within this District, and is expected to remain in this District during the pendency of her arrest and this action.

4.      Plaintiff, SEAN THOMAS FLYNN was and is a resident of Melbourne, Florida and is otherwise *sui juris*.

5.      At all material times, Plaintiff was the husband of Decedent and is Personal Representative of the Estate of MOLLIE CATHERINE GHIZ-FLYNN.

6.      Defendant DUSTIN MCCABE was and is a resident of Palm Beach County, Florida and is otherwise *sui juris*.

7.      Defendant KRISTY MCCABE was and is a resident of Palm Beach County, Florida and is otherwise *sui juris*.

8.      Defendant, FLORIDA SCUBA CHARTERS, INC., was and is a Florida for Profit Corporation with its principle address and principle place of business in Palm Beach County, Florida.

9.      Defendant NPBM, LLC a/k/a NORTH PALM BEACH MARINA ("NPBM") is a foreign limited liability company registered to conduct business in Florida and maintaining its principle place of business in Palm Beach County, Florida. NPBM owns, operates, and manages the North Palm Beach Marina ("the Marina").

10.     Defendants, at all times material hereto, personally or through an agent:

    a.     Operated, conducted, engaged in or carried on a business venture in this state and/or county and had an office or agency in this state and/or county;

    b.     Were engaged in substantial activity within this state;

    c.     Derived substantial income from this state and within this district;

    d.     Operated vessel(s) in the waters of this state;

    e.     Committed one or more of the acts stated in Florida Statutes, §48.081, §48.181 or §48.193;

    f.     The acts of Defendants set out in this Complaint occurred in part in this county and/or state;

11.     Venue is proper in this forum because *M/V SOUTHERN COMFORT* is located in Palm Beach, Florida, within the waters of this District; the maritime tort giving rise to Plaintiff's claims occurred in this District; FLORIDA SCUBA and NPBM do business in this District; and DUSTIN MCCABE and KRISTY MCCABE reside in this District.

## PRELIMINARY ALLEGATIONS

12.     The Vessel was owned by and titled to Defendant DUSTIN MCCABE in his individual capacity.

13.     At all times material, the Vessel was operated and captained by Defendant DUSTIN MCCABE.

14.     At and before the beginning of the voyage on which the incident occurred, the master/captain/owner of the vessel, Defendant DUSTIN MCCABE, had privity and knowledge of the negligence which caused the subject incident because the actions of Defendant DUSTIN MCCABE were directly involved in causing the incident, the injuries

and damages suffered by the Plaintiff and the Decedent's death.

15. The boating activity was supposed to be for a day of scuba diving.  The risk of the boat engines being put in reverse and running over its passengers is not a risk ordinarily inherent in the activity of diving.

16. Pursuant to the Florida Wrongful Death Act, Chapter 768, Florida Statutes, Plaintiff, the Decedent's husband is a statutory survivor, and is entitled to all damages under Chapter 768, Florida Statutes, for the wrongful death of his wife.

**COUNT I**
***IN REM* CLAIM AGAINST M/V SOUTHERN COMFORT**

Plaintiff, realleges and readopts paragraphs 1 through 16 as if fully set forth herein and further states as follows:

17. This is an *in rem* action to enforce a lien for damages arising from a maritime tort.

18. On or about March 29, 2020, the Vessel stopped at an area known as the Breaker's Reef, located approximately 1.5 miles southeast of Lake Worth inlet, to allow divers to enter the water.   At all times material, the Vessel was located and the subject incident occurred in navigable waters off the coast of Palm Beach County, Florida.

19. On or about March 29, 2020, Plaintiff and Decedent surfaced after completing their first dive.  After making contact with the crew aboard the Vessel they were waved over to approach the Vessel.

20. While knowing that the Plaintiff and Decedent were at the stern attempting to re-board the Vessel, Defendant DUSTIN MCCABE, reversed the gearshift of the Vessel.  Both Plaintiff and Decedent were sucked under the Vessel with Decedent becoming entangled in the moving propellers.

21. Plaintiff tried in vain but was unable to free the Decedent.  Two individuals aboard the

vessel jumped in the water to try and pull the Decedent free from the propellers.   Decedent was freed and her body pulled back onto the Vessel.

22.    Plaintiff watched in horror to the futile efforts to save his wife who was declared dead by the time the Vessel returned to the Marina.    Cause of death was determined to be "drowning" with "chop wounds of the lower extremities" as a significant contributing factor.

23.    The actions, conduct, and failures of the Defendant M/V SOUTHERN COMFORT caused this incident violated Florida Statutes, inland navigation rules incorporated therein, Federal Statutes and Federal Regulation and inland rules of navigation incorporated therein, and the duty of reasonable care under the circumstances under General Maritime Law.  These breaches constitute negligence, negligence *per se* and caused the incident, the injuries and damages suffered by the Plaintiff and the Decedent's death.

24.    At all material times, it was the duty of the Defendant M/V SOUTHERN COMFORT to provide Plaintiff and Decedent with reasonable care under the circumstances.

25.    On or about March 29, 2020, Defendant M/V SOUTHERN COMFORT and/or its owners, operators, agents, servants, joint venturers and/or crew breached the duty to provide Plaintiff and Decedent with reasonable care under the circumstances by committing the following acts and/or omissions, including, but not limited to:

a.    Failing to provide a safe scuba diving experience;

b.    Failing to provide a safe means for divers to re-board the vessel;

c.    Allowing passengers to re-board at the stern of the vessel from the water where there is no clear line of sight between the helm of the vessel and aft area of the vessel where those who seek to re-board the vessel from water on command of the master are positioned;

d.    Allowing passengers to re-board the vessel from water at the stern of the vessel where there is no reasonable method of communication from the master of the vessel or whomever is at the helm to the divemaster or anyone at the aft of the vessel who is awaiting instruction from the master as to when it is safe to re-board the vessel from the water;

e.    Providing a vessel without a reasonable and sufficient number of crew for the purpose of keeping proper lookout, communicating reasonably and properly from the helm to the aft of the vessel, communicating to the passengers and directly to passengers who are attempting to re-board the vessel from the water at the stern of the vessel;

f.    Failing to properly select, hire, train and monitor the captain and crew of the vessel and to control the passengers on the vessel;

g.    Operating the subject vessel without the master and crew being properly trained and proficient in the operation of the subject vessel for dive charters;

h.    Failing to provide a master and crew with appropriate experience and who were familiar with, experienced with, and who were safe in operating the subject vessel in this type of operation where the vessel let passengers re-board the vessel from the aft of the vessel;

i.    Failing to promulgate and enforce rules and procedures for operating the vessel, for communicating loudly and clearly from the helm to the aft, and for controlling the activities of passengers, including those attempting to re-board the vessel from the water at the stern of the vessel;

j.    Failing to provide safe, reasonably and proper training to the crew and passengers;

k.    Failing to devise and implement a safe, reasonable, and proper plan and method for maneuvering and moving the vessel around people in the water and/or people attempting to re-board the vessel, including the Plaintiff and Decedent;

l.    Failing to communicate a safe, reasonable, and proper plan and method for maneuvering and moving the vessel around people in the water and/or people attempting to re-board the vessel, including the Plaintiff and Decedent;

m.    Failing to maintain a proper lookout at all times to avoid collision of the vessel with people in the water and/or people attempting to re-board the vessel, including the Plaintiff and Decedent;

n.    Failing to maintain a proper lookout by sight and hearing as well as all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and risk of collision of the vessel and with passengers, including the Plaintiff and Decedent;

o.     Failing to operate the vessel in a safe manner so as to avoid collision with people in the water and/or people attempting to re-board the vessel, including the Plaintiff and Decedent;

p.     Negligently reversing the vessel when people were in the water at the aft of the vessel attempting to re-board the vessel;

q.     Failing to maintain a safe, reasonable and proper method of communication by and between the helmsman, crewmembers and passengers attempting to re-board the vessel from the aft of the vessel, especially where there was no visibility between the master at the helm, the crew at the aft of the vessel and the divers in the water;

r.     Failing to monitor the activities and movements of passengers in the water, including the Plaintiff and Decedent;

s.     Failing to warn the passengers, including the Plaintiff and Decedent that the helmsman would put the vessel in reverse as they were at the aft of the vessel, as instructed, attempting to re-board the vessel;

t.     Failing to provide the necessary and required pre-dive safety briefing;

u.     Failing to implement a safe method of operation which will be reasonable, safe and would prevent dangerous conditions such as the ones in this case;

v.     Negligently allowing an ongoing, recurring, continuous and/or repetitive problem to occur and/or remain which would cause accidents or injuries to divers;

w.     Failing to maintain the vessel in a reasonably safe condition;

x.     By other acts or omissions to be revealed in the course of discovery.

26.     The negligence of the *in rem* Defendant, M/V SOUTHERN COMFORT, was the cause, in whole or in part, of Plaintiff's injuries and the death of the Decedent.

27.     The negligent conditions were created by the Defendant M/V SOUTHERN COMFORT, were known to the Defendant M/V SOUTHERN COMFORT, had existed for a sufficient length of time so that the Defendant M/V SOUTHERN COMFORT should have known of them; and were a continuous and repetitive problem thus giving notice to the Defendant M/V SOUTHERN COMFORT.

28.     As a further direct and proximate result of the above-mentioned negligence of Defendant M/V SOUTHERN COMFORT that resulted in the death of the Decedent, Plaintiff, the survivor of the Decedent, has suffered harm therefrom, including the loss of the support and services, and love and affection of his wife; and has suffered mental pain and suffering therefrom.  Plaintiff claims all damages specified herein, as well as all damages allowable under Florida's Wrongful Death Act.

29.     The Estate of MOLLIE CATHERINE GHIZ-FLYNN, deceased, claims all damages allowed by Florida's Wrongful Death Act (Florida Statute §768 et. seq.), including, but not limited to monetary support of the deceased, medical and funeral expenses, and loss of services and support.

30.     Plaintiff is entitled to full recovery of damages resulting from the alleged maritime tort against the Defendant M/V SOUTHERN COMFORT *in rem* under 46 U.S.C. §31301(5)(B).

WHEREFORE, Plaintiff, SEAN THOMAS FLYNN respectfully requests:

a.      That a Warrant for Arrest *in rem* issue against Defendant M/V SOUTHERN COMFORT and that all persons claiming any interest therein may be cited to appear and answer the matters aforesaid;

b.      That Plaintiff be decreed to have a lien upon the *in rem* Defendant M/V SOUTHERN COMFORT, and that such lien be foreclosed in accordance with law and thereupon that the Vessel be condemned and sold in payment of the damages suffered by Plaintiff;

c.     That judgment be entered in Plaintiff's favor for all recoverable damages, including compensatory damages, court costs, pre- and post-judgment interest, attorneys' fees, and such other relief as the Court deems just; and

d.     That Plaintiff be permitted to bid his judgment against the Vessel at a U.S. Marshal's sale.

## COUNT II
## WRONGFUL DEATH NEGLIGENCE CLAIM
### (as to Defendants Florida Scuba)

Plaintiff, realleges and readopts paragraphs 1 through 16 as if fully set forth herein and further states as follows:

31.    Defendant DUSTIN MCCABE is the owner, officer, and president of FLORIDA SCUBA CHARTERS, INC.  Defendant KRISTY MCCABE is the owner, officer, secretary, and registered agent of FLORIDA SCUBA CHARTERS, INC.  Defendants FLORIDA SCUBA CHARTERS, INC., DUSTIN MCCABE, and KRISTY MCCABE are collectively referred to as "FLORIDA SCUBA," and each allegation and count pled collectively against FLORIDA SCUBA is so pled against each Defendant: FLORIDA SCUBA CHARTERS, INC., DUSTIN MCCABE, and KRISTY MCCABE individually.

32.    At all material times, Defendants FLORIDA SCUBA advertised and sold its services for diver charters.  Defendants FLORIDA SCUBA advertised, marketed, and represented that Defendant DUSTIN MCCABE held a Master Rating and Dive Instructor rating from Scuba Diving International ("SDI").

33.    The Vessel was newly acquired by the Defendants FLORIDA SCUBA which was in the process of converting subject vessel from a fishing boat to a dive boat.  Previously, Defendants FLORIDA SCUBA operated a 30 foot single engine vessel, *Sea Scout*, which

was a typical dive boat.

34. The weekend of March 28-29, 2020 was the inaugural weekend of Defendants FLORIDA SCUBA's use of the Vessel for its dive charters.

35. On or about March 28, 2020, Defendants FLORIDA SCUBA used the Vessel for its dive charters and experienced major safety problems. The Vessel experienced mechanical trouble with the engines, and due to his lack of familiarity and experience with the Vessel, Defendant DUSTIN MCCABE had difficulty maneuvering, handling and/or controlling the vessel.

36. Due to his inexperience and inability to control the Vessel, on or about March 28, 2020, Defendant DUSTIN MCCABE experienced difficulties retrieving divers from the water placing divers in harm's way and injuring one diver. When attempting to retrieve one diver from the water, Defendant DUSTIN MCCABE, reversed the vessel over the diver. The diver only managed to escape with her life by pushing her speargun into the turning propellers and pushing herself away. This diver suffered physical injuries. A second diver was pulled under the boat towards the propellers. Ultimately, Defendants FLORIDA SCUBA had to use a rope to pick up the divers. Then, when returning to the Marina, Defendant DUSTIN MCCABE, was unable to control and maneuver the Vessel into the dock and ran it aground, damaging/breaking the rudder.

37. Divers who experienced the horrors and problems from the March 28, 2020 trip begged Defendants FLORIDA SCUBA not to take the Vessel out again for dive trips until the Vessel was fixed and Defendant DUSTIN MCCABE was better experienced to competently and safely operate the Vessel.

38. Defendants FLORIDA SCUBA disregarded these warnings and pleas and made the

decision to conduct dive charters the following day with Defendant DUSTIN MCCABE at the helm.

39.     On or about March 29, 2020, the Vessel, departed from the Marina for a dive charter with six passengers, including the Plaintiff and the Decedent. The subject charter was only Defendants FLORIDA SCUBA's third dive trip with the Vessel, the first two dives occurring the day before.

40.     At all times material hereto, Defendants FLORIDA SCUBA and DUSTIN MCCABE did not disclose to the divers aboard the Vessel on March 29, 2020, of the problems and dangers divers encountered the previous day on March 28, 2020, when DUSTIN MCCABE operated the Vessel.

41.     On or about March 29, 2020, Defendants FLORIDA SCUBA told the divers that it was not required to provide the USCG pre-dive safety briefing as the Vessel was not a USCG regulated dive boat.  The required USCG pre-dive safety briefing was not provided.

42.     On or about March 29, 2020, Defendants FLORIDA SCUBA and several crewmembers commented that no crewmember would be in the water with the divers and the crew needed to remain on the Vessel to become more familiar with the Vessel and to assist divers back onboard.   No crewmember entered the water with the divers.

43.     On or about March 29, 2020, the Vessel stopped at an area known as the Breaker's Reef, located approximately 1.5 miles southeast of Lake Worth inlet, to allow divers to enter the water.   At all times material, the Vessel was located and the subject incident occurred in navigable waters off the coast of Palm Beach County, Florida.

44.     On or about March 29, 2020, Plaintiff and Decedent surfaced after completing their first dive.  After making contact with the crew of the Vessel they were waved over to approach

the Vessel.

45.    While knowing that the Plaintiff and Decedent were at the stern attempting to re-board the Vessel, Defendant DUSTIN MCCABE, reversed the gearshift of the Vessel.  Both Plaintiff and Decedent were sucked under the Vessel with Decedent becoming entangled in the moving propellers.

46.    Plaintiff tried in vain but was unable to free the Decedent.  Two individuals on the Vessel jumped in the water to try and pull the Decedent free from the propellers.   Decedent was freed and her body pulled back onto the Vessel.

47.    Plaintiff watched in horror to the futile efforts to save his wife who was declared dead by the time the Vessel returned to the Marina.   Cause of death was determined to be "drowning" with "chop wounds of the lower extremities" as a significant contributing factor.

48.    At all times material, Defendants FLORIDA SCUBA owed a duty to exercise reasonable care for the health, welfare and safety of its invitees, guests, and patrons.

49.    The duties imposed on the Defendants FLORIDA SCUBA are created by General Maritime Law, by federal and state statutes and regulation and the navigational rules incorporated therein and more fully described below, and by the representations made by the Defendants on their website and in person by which the Defendants FLORIDA SCUBA voluntarily understood to assume the responsibility to provide extremely reputable and professional Vessel operators, and safety during its event.

50.    At all times material, Defendants FLORIDA SCUBA, by and through its employees, servants, agents, and/or representatives acting within the course and scope of their employment, was negligent and breached its duty of care to the Plaintiff and the Decedent

by committing the following acts and/or omissions, including, but not limited to:

a.      Failing to provide a safe dive excursion/charter;

b.      Failing to provide a safe means for divers to re-board the Vessel;

c.      Providing a Vessel for the purpose of transporting passengers and allowing passengers to re-board at the stern of the Vessel from the water where there is no clear line of sight between the helm of the Vessel and aft area of the Vessel where those who seek to re-board the Vessel from water on command of the master are positioned;

d.      Providing a Vessel for the purpose of transporting passengers and allowing passengers to re-board the Vessel from water at the stern of the Vessel where there is no reasonable method of communication from the master of the Vessel or whomever is at the helm to the divemaster or anyone at the aft of the Vessel who is awaiting instruction from the master as to when it is safe to re-board the Vessel from the water;

e.      Providing a Vessel without a reasonable and sufficient number of crew for the purpose of keeping proper lookout, communicating reasonably and properly from the helm to the aft of the Vessel, communicating to the passengers and directly to passengers who are attempting to re-board the Vessel from the water at the stern of the Vessel;

f.      Failing to properly select, hire, train and monitor the captain and crew of the Vessel and to control the passengers on the Vessel;

g.      Operating the subject Vessel without the master and crew being properly trained and proficient in the operation of the subject Vessel for dive charters;

h.      Failing to provide a master and crew with appropriate experience and who were familiar with, experienced with, and who were safe in operating the subject Vessel in this type of operation where the Vessel let passengers re-board the Vessel from the aft of the Vessel;

i.      Failing to promulgate and enforce rules and procedures for operating the Vessel, for communicating loudly and clearly from the helm to the aft, and for controlling the activities of passengers, including those attempting to re-board the Vessel from the water at the stern of the Vessel;

j.      Failing to provide safe, reasonably and proper training to the crew and passengers;

k.      Failing to devise and implement a safe, reasonable, and proper plan and method for maneuvering and moving the Vessel around people in the water and/or people attempting to re-board the Vessel, including the Plaintiff and Decedent;

l.      Failing to communicate a safe, reasonable, and proper plan and method for maneuvering and moving the Vessel around people in the water and/or people attempting to re-board the Vessel, including the Plaintiff and Decedent;

m.      Failing to maintain a proper lookout at all times to avoid collision of the Vessel with people in the water and/or people attempting to re-board the Vessel, including the Plaintiff and Decedent;

n.      Failing to maintain a proper lookout by sight and hearing as well as all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and risk of collision of the Vessel and with passengers, including the Plaintiff and Decedent;

o.      Failing to operate the Vessel in a safe manner so as to avoid collision with people in the water and/or people attempting to re-board the Vessel, including the Plaintiff and Decedent;

p.      Negligently reversing the Vessel when people were in the water at the aft of the Vessel attempting to re-board the Vessel;

q.      Failing to maintain a safe, reasonable and proper method of communication by and between the helmsman, crewmembers and passengers attempting to re-board the Vessel from the aft of the Vessel, especially where there was no visibility between the master at the helm, the crew at the aft of the Vessel and the divers in the water;

r.      Failing to monitor the activities and movements of passengers in the water, including the Plaintiff and Decedent;

s.      Failing to warn the passengers, including the Plaintiff and Decedent that the helmsman would put the Vessel in reverse as they were at the aft of the Vessel, as instructed, attempting to re-board the Vessel;

t.      Failing to provide the necessary and required pre-dive safety briefing;

u.      Failing to implement a safe method of operation which will be reasonable, safe and would prevent dangerous conditions such as the ones in this case;

v.      Negligently allowing an ongoing, recurring, continuous and/or repetitive problem to occur and/or remain which would cause accidents or injuries to divers;

w.      Failing to maintain the Vessel in a reasonably safe condition;

x.      By other acts or omissions to be revealed in the course of discovery.

51.   The negligent conditions were created by the Defendants FLORIDA SCUBA, were known to the Defendants FLORIDA SCUBA, had existed for a sufficient length of time so that the Defendants FLORIDA SCUBA should have known of them; and were a continuous and repetitive problem thus giving notice to the Defendants FLORIDA SCUBA.

52.   The actions, conduct, and failures of the Defendants FLORIDA SCUBA which caused this incident violated Florida Statutes, inland navigation rules incorporated therein, Federal Statutes and Federal Regulation and inland rules of navigation incorporated therein, and the duty of reasonable care under the circumstances under General Maritime Law.  These breaches constitute negligence, negligence *per se* and caused the incident, the injuries and damages suffered by the Plaintiff and the Decedent's death.

53.   As a direct and proximate result of the negligence and carelessness of Defendants FLORIDA SCUBA the Decedent was killed while participating in the scuba diving excursion.

54.   As a further direct and proximate result of the above-mentioned negligence of Defendants FLORIDA SCUBA that resulted in the death of the Decedent, Plaintiff, the survivor of the Decedent, has suffered harm therefrom, including the loss of the support and services, and love and affection of his wife; and has suffered mental pain and suffering therefrom. Plaintiff claims all damages specified herein, as well as all damages allowable under Florida's Wrongful Death Act.

55.   The Estate of MOLLIE CATHERINE GHIZ-FLYNN, deceased, claims all damages allowed by Florida's Wrongful Death Act (Florida Statute §768 et. seq.), including, but not limited to monetary support of the deceased, medical and funeral expenses, and loss of services and support.

WHEREFORE, the Plaintiff SEAN THOMAS FLYNN, individually and as Personal Representative of the Estate of MOLLIE CATHERINE GHIZ-FLYNN demands judgment against Defendant FLORIDA SCUBA, for damages in excess of this Court's minimal jurisdictional limits, as well as post judgment interest as allowed by law, costs and attorney's fees as may be allowed by law.

## COUNT III
## NEGLIGENCT *PER SE*
### (as to Defendants Florida Scuba)

Plaintiff, realleges and readopts paragraphs 1 through 16 as if fully set forth herein and further states as follows:

56.     Defendant DUSTIN MCCABE is the owner, officer, and president of FLORIDA SCUBA CHARTERS, INC.  Defendant KRISTY MCCABE is the owner, officer, secretary, and registered agent of FLORIDA SCUBA CHARTERS, INC.  Defendants FLORIDA SCUBA CHARTERS, INC., DUSTIN MCCABE, and KRISTY MCCABE are collectively referred to as "FLORIDA SCUBA," and each allegation and count pled collectively against FLORIDA SCUBA is so pled against each Defendant: FLORIDA SCUBA CHARTERS, INC., DUSTIN MCCABE, and KRISTY MCCABE individually.

57.     At all material times, Defendants FLORIDA SCUBA advertised and sold its services for diver charters.  Defendants FLORIDA SCUBA advertised, marketed, and represented that Defendant DUSTIN MCCABE held a Master Rating and Dive Instructor rating from Scuba Diving International ("SDI").

58.     The Vessel was newly acquired by the Defendants FLORIDA SCUBA which was in the process of converting subject Vessel from a fishing boat to a dive boat.  Previously, Defendants FLORIDA SCUBA operated a 30 foot single engine vessel, *Sea Scout*, which

was a typical dive boat.

59.     The weekend of March 28-29, 2020 was the inaugural weekend of Defendants FLORIDA
        SCUBA's use of the Vessel for its dive charters.

60.     On or about March 28, 2020, Defendants FLORIDA SCUBA used the Vessel for its dive
        charters and experienced major safety problems.  The Vessel experienced mechanical
        trouble with the engines, and due to his lack of familiarity and experience with the Vessel,
        Defendant DUSTIN MCCABE had difficulty maneuvering, handling and/or controlling
        the Vessel.

61.     Due to his inexperience and inability to control the Vessel, on or about March 28, 2020,
        Defendant DUSTIN MCCABE experienced difficulties retrieving divers from the water
        placing divers in harm's way and injuring one diver.  When attempting to retrieve one diver
        from the water, Defendant DUSTIN MCCABE, reversed the Vessel over a diver.  The
        diver only managed to escape with her life by pushing her speargun into the turning
        propellers and pushing herself away.  This diver suffered physical injuries.  A second diver
        was pulled under the boat towards the propellers.  Ultimately, Defendants FLORIDA
        SCUBA had to use a rope to pick up the divers.  Then, when returning to the Marina,
        Defendant DUSTIN MCCABE, was unable to control and maneuver the Vessel into the
        gas dock and ran it aground, damaging/breaking the rudder.

62.     Divers who experienced the horrors and problems from the March 28, 2020 trip begged
        Defendants FLORIDA SCUBA not to take the Vessel out again for dive trips until the
        Vessel was fixed and Defendant DUSTIN MCCABE was better experienced to
        competently and safely operate the Vessel.

63.     Defendants FLORIDA SCUBA disregarded these warnings and pleas and made the

decision to conduct dive charters the following day with Defendant DUSTIN MCCABE at the helm.

64.     On or about March 29, 2020 the Vessel, departed from the Marina for a dive charter with six passengers, including the Plaintiff and the Decedent. The subject charter was only Defendants FLORIDA SCUBA's third dive trip with the Vessel, the first two dives occurring the day before.

65.     At all times material hereto, Defendants FLORIDA SCUBA and DUSTIN MCCABE did not disclose to the divers aboard the Vessel on March 29, 2020 of the problems and dangers divers encountered the previous day on March 28, 2020 when DUSTIN MCCABE operated the Vessel.

66.     On or about March 29, 2020, Defendants FLORIDA SCUBA told the divers that it was not required to provide the USCG pre-dive safety briefing as the Vessel was not a USCG regulated dive boat.  The required USCG pre-dive safety briefing was not provided.

67.     On or about March 29, 2020, Defendants FLORIDA SCUBA mentioned to the divers that when exiting the water they should come directly to the center of the stern because the day before divers were being sucked under the Vessel.

68.     On or about March 29, 2020, Defendants FLORIDA SCUBA and several crewmembers commented that no crewmember would be in the water with the divers and the crew needed to remain on the Vessel to become more familiar with the Vessel and to assist divers back onboard.   No crewmember entered the water with the divers.

69.     On or about March 29, 2020, the Vessel stopped at an area known as the Breaker's Reef, located approximately 1.5 miles southeast of Lake Worth inlet, to allow divers to enter the water.   At all times material, the Vessel was located and the subject incident occurred in

navigable waters off the coast of Palm Beach County, Florida.

70.    On or about March 29, 2020, Plaintiff and Decedent surfaced after completing their first dive.  After making contact with the crew of the Vessel they were waved over to approach the boat.

71.    While knowing that the Plaintiff and Decedent were at the stern attempting to re-board the Vessel, Defendant DUSTIN MCCABE, reversed the gearshift of the Vessel.  Both Plaintiff and Decedent were sucked under the Vessel with Decedent becoming entangled in the moving propellers.

72.    Plaintiff tried in vain but was unable to free the Decedent.  Two individuals aboard the Vessel jumped in the water to try and pull the Decedent free from the propellers.  Decedent was freed and her body pulled back onto the Vessel.

73.    Plaintiff watched in horror to the futile efforts to save his wife who was declared dead by the time the Vessel returned to the Marina.   Cause of death was determined to be "drowning" with "chop wounds of the lower extremities" as a significant contributing factor.

74.    At all times material, Defendants FLORIDA SCUBA owed a duty to exercise reasonable care for the health, welfare and safety of its invitees, guests, and patrons.

75.    The duties imposed on the Defendants FLORIDA SCUBA are created by General Maritime Law, by federal and state statutes and regulation and the navigational rules incorporated therein and more fully described below, and by the representations made by the Defendants on their website and in person by which the Defendants FLORIDA SCUBA voluntarily understood to assume the responsibility to provide extremely reputable and professional Vessel operators, and safety during its event.

76.     At all times material, Defendants FLORIDA SCUBA owed a duty to exercise reasonable care for the health, welfare and safety of its invitees, guests, and patrons.

77.     The duties imposed on the Defendants FLORIDA SCUBA are created by General Maritime Law, by federal and state statutes and regulation and the navigational rules incorporated therein and more fully described below, and by the representations made by the Defendants on their website and in person by which the Defendants FLORIDA SCUBA voluntarily understood to assume the responsibility to provide extremely reputable and professional Vessel operators, safety during its event, and a team of professional operators who accompany passengers on the dive.

78.     At all times material, Defendants FLORIDA SCUBA, by and through its employees, servants, agents, and/or representatives acting within the course and scope of their employment, was negligent and breached its duty of care to the Plaintiff and the Decedent by committing the following acts and/or omissions, including, but not limited to:

    a.     Failing to comply with applicable standards, statutes, and/or regulations, the violation of which is negligence *per se* and/or evidence of negligence;

    b.     Violating Florida Statute §327.33(1) by operation of the subject Vessel in a reckless manner and in willful or wanton disregard for the safety of persons or property in a manner as to endanger, or likely to endanger life or limb, or injury any person, the violation of which is negligence *per se* and/or evidence of negligence;

    c.     Violating Florida Statute §327.33(2) by failing to operate the subject Vessel within Florida waters in a reasonable and prudent manner, having regard for all attendant circumstances so as to not endanger the life, limb or property of any person, and thus operating the subject Vessel in a reckless manner, the violation of which is negligence *per se* and/or evidence of negligence;

    d.     Violating Florida Statute §327.33(3) by failing to operate the subject Vessel in Florida waters adhering to the rules of navigation including but not limited to (i) inland and international navigation Rule 5 which provides that "every vessel shall at all times maintain a proper lookout by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and risk of collision; and (ii) inland and navigation

rules requiring collision avoidance, the violation of which is negligence *per se* and/or evidence of negligence;

e.  Violating 46 U.S.C §2302 (a) and (b) which prohibits the negligent or grossly negligent operation of a vessel so as to endanger lives, which activities include operating a boat in a designated swimming area, excessive speed, and/or hazardous water sport practices, the violation of which is negligence *per se* and/or evidence of negligence;

f.  Violating other sections of the Federal Shipping Act, Chapter 46 of the U.S. Code and regulations promulgated thereunder, including but not limit to 46 U.S.C §8104 (watches); 46 U.S.C §3203(safety management system); and/or 46 U.S.C §30102 (liability to passengers); and Federal Regulations, including but not limited to 46 CFR §85.304 (navigation under way) which provides that "the master shall operate the vessel keeping the safety of the passengers and crew foremost in mind by directing the vessel to prevent a casualty, the violation of which is negligence *per se* and/or evidence of negligence;

g.  Violating Palm Beach County Covid-19 Public Safety Order Number 1  (Order no.: 2020-001) which closed "all boat docks, ramps, marinas and other venues utilized for launching any vessel" the violation of which is negligence *per se* and/or evidence of negligence;

h.  Violating Amendment to Emergency Order Number 1 Palm Beach Count Covid-19 (Order no.: 2020-001a) closed "all boat docks, ramps, marinas, and other venues utilized for launching any vessels to be used for recreational purposes, including but not limited to, fishing charters, boat tours, diving excursions, and the like" the violation of which is negligence *per se* and/or evidence of negligence;

i.  By other acts or omissions to be revealed in the course of discovery.

79.  The actions, conduct, and failures of the Defendants which caused this incident violated Florida Statutes, inland navigation rules incorporated therein, Federal Statutes and Federal Regulation and inland rules of navigation incorporated therein, and the duty of reasonable care under the circumstances under General Maritime Law.  These breaches constitute negligence, negligence *per se* and caused the incident, the injuries and damages suffered by the Plaintiff and the Decedent's death.

80.  Failure to comply with and violation of applicable industry standard, statutes and/or regulations constitutes negligence *per se*.

81.     Failure to comply with applicable industry standard, statutes and/or regulations which involve the Florida Rule and shifts the burden of proof to the Defendants in the proof of negligence or proof of the absence of negligence.

82.     As a direct and proximate result of the negligence *per se* of Defendants FLORIDA SCUBA the Decedent was killed while participating in the scuba diving excursion.

83.     As a further direct and proximate result of the above-mentioned negligence of Defendants FLORIDA SCUBA that resulted in the death of the Decedent, Plaintiff, the survivor of the Decedent, has suffered harm therefrom, including the loss of the support and services, and love and affection of his wife; and has suffered mental pain and suffering therefrom. Plaintiff claims all damages specified herein, as well as all damages allowable under Florida's Wrongful Death Act.

84.     The Estate of MOLLIE CATHERINE GHIZ-FLYNN, deceased, claims all damages allowed by Florida's Wrongful Death Act (Florida Statute §768 et. seq.), including, but not limited to monetary support of the deceased, medical and funeral expenses, and loss of services and support.

WHEREFORE, the Plaintiff SEAN THOMAS FLYNN, individually and as Personal Representative of the Estate of MOLLIE CATHERINE GHIZ-FLYNN demands judgment against Defendants FLORIDA SCUBA, for damages in excess of this Court's minimal jurisdictional limits, as well as post judgment interest as allowed by law, costs and attorney's fees as may be allowed by law.

## COUNT IV
## <u>WRONGFUL DEATH NEGLIGENCE CLAIM</u>
### (as to NPBM Defendant)

Plaintiff, realleges and readopts paragraphs 1 through 16 as if fully set forth herein and further states as follows:

85.     At all material times, the Defendant NPBM owed, operated, and managed the North Palm Beach Marina.

86.     At all times material, Defendant NPBM advertised, marketed, and represented to the public that Defendants FLORIDA SCUBA was its "on-premises boat and scuba charter" and its "local charter partners."

87.     At all material times, the Defendants FLORIDA SCUBA operated a diver charter business from the Marina with its partner NPBM.

88.     At all material times, Defendants FLORIDA SCUBA advertised and sold its services for diver charters.  Defendants FLORIDA SCUBA advertised, marketed, and represented that Defendant DUSTIN MCCABE held a Master Rating and Dive Instructor rating from Scuba Diving International ("SDI").

89.     The Vessel was newly acquired by the Defendants FLORIDA SCUBA which was in the process of converting subject Vessel from a fishing boat to a dive boat.  Previously, Defendants FLORIDA SCUBA operated a 30 foot single engine vessel, *Sea Scout*, which was a typical dive boat.

90.     The weekend of March 28-29, 2020 was the inaugural weekend of Defendants FLORIDA SCUBA's use of the Vessel for its dive charters.

91.     On or about March 28, 2020, Defendants FLORIDA SCUBA used the Vessel for its dive charters and experienced major safety problems.  The Vessel experienced mechanical

trouble with the engines, and due to his lack of familiarity and experience with the Vessel, Defendant DUSTIN MCCABE had difficulty maneuvering, handling and/or controlling the Vessel.

92.     Due to his inexperience and inability to control the Vessel, on or about March 28, 2020, Defendant DUSTIN MCCABE experienced difficulties retrieving divers from the water placing divers in harm's way and injuring one diver.  When attempting to retrieve one diver from the water, Defendant DUSTIN MCCABE, reversed the Vessel over a diver.  The diver only managed to escape with her life by pushing her speargun into the turning propellers and pushing herself away.  This diver suffered physical injuries.  A second diver was pulled under the boat towards the propellers.  Ultimately, Defendants FLORIDA SCUBA had to use a rope to pick up the divers.  Then, when returning to the Marina, Defendant DUSTIN MCCABE, was unable to control and maneuver the Vessel into the gas dock and ran it aground, damaging/breaking the rudder.

93.     Divers who experienced the horrors and problems from the March 28, 2020 trip begged Defendants FLORIDA SCUBA not to take the Vessel out again for dive trips until the Vessel was fixed and Defendant DUSTIN MCCABE was better experienced to competently and safely operate the Vessel.

94.     Defendants NPBM and FLORIDA SCUBA disregarded these warnings and pleas and made the decision to conduct dive charters the following day with Defendant DUSTIN MCCABE at the helm.

95.     On or about March 29, 2020 the Vessel, departed from the Marina for a dive charter with six passengers, including the Plaintiff and the Decedent. The subject charter was only Defendants FLORIDA SCUBA's third dive trip with the Vessel, the first two dives

occurring the day before.

96.   At all times material hereto, Defendants NPBM, FLORIDA SCUBA and DUSTIN MCCABE did not disclose to the divers aboard the Vessel on March 29, 2020 of the problems and dangers divers encountered the previous day on March 28, 2020 when DUSTIN MCCABE operated the Vessel.

97.   On or about March 29, 2020, Defendants FLORIDA SCUBA told the divers that it was not required to provide the USCG pre-dive safety briefing as the Vessel was not a USCG regulated dive boat.  The required USCG pre-dive safety briefing was not provided.

98.   On or about March 29, 2020, Defendants FLORIDA SCUBA mentioned to the divers that when exiting the water they should come directly to the center of the stern because the day before divers were being sucked under the Vessel.

99.   On or about March 29, 2020, Defendants FLORIDA SCUBA and several crewmembers commented that no crewmember would be in the water with the divers and the crew needed to remain on the Vessel to become more familiar with the Vessel and to assist divers back onboard.   No crewmember entered the water with the divers.

100.   On or about March 29, 2020, the Vessel stopped at an area known as the Breaker's Reef, located approximately 1.5 miles southeast of Lake Worth inlet, to allow divers to enter the water.   At all times material, the Vessel was located and the subject incident occurred in navigable waters off the coast of Palm Beach County, Florida.

101.   On or about March 29, 2020, Plaintiff and Decedent surfaced after completing their first dive.  After making contact with the crew of the Vessel they were waved over to approach the boat.

102.   While knowing that the Plaintiff and Decedent were at the stern attempting to re-board the

Vessel, Defendant DUSTIN MCCABE, reversed the gearshift of the Vessel. Both Plaintiff and Decedent were sucked under the Vessel with Decedent becoming entangled in the moving propellers.

103.   Plaintiff tried in vain but was unable to free the Decedent. Two individuals aboard the Vessel jumped in the water to try and pull the Decedent free from the propellers. Decedent was freed and her body pulled back onto the Vessel.

104.   Plaintiff watched in horror to the futile efforts to save his wife who was declared dead by the time the Vessel returned to the Marina. Cause of death was determined to be "drowning" with "chop wounds of the lower extremities" as a significant contributing factor.

105.   At all times material, Defendant NPBM owed a duty to exercise reasonable care for the health, welfare and safety of its invitees, guests, and patrons.

106.   The duties imposed on the Defendant NPBM are created by General Maritime Law, by federal and state statutes and regulation and the navigational rules incorporated therein and more fully described below, and by the representations made by the Defendant on its website and in person by which the Defendant NPBM voluntarily understood to assume the responsibility to provide extremely reputable and professional services, including its on-premises charter partner Defendants FLORIDA SCUBA.

107.   At all times material, Defendant NPBM, by and through its employees, servants, agents, and/or representatives acting within the course and scope of their employment, was negligent and breached its duty of care to the Plaintiff and the Decedent by committing the following acts and/or omissions, including, but not limited to:

a.   Failing to provide a safe dive excursion/charter;

b.      Failing to provide a safe means for divers to re-board the Vessel;

c.      Negligently allowing its on-premises charter partner Defendants FLORIDA SCUBA  to provide a Vessel for the purpose of transporting passengers and allowing passengers to re-board at the stern of the Vessel from the water where there is no clear line of sight between the helm of the Vessel and aft area of the Vessel where those who seek to re-board the Vessel from water on command of the master are positioned;

d.      Negligently allowing its on-premises charter partner Defendants FLORIDA SCUBA to provide a Vessel for the purpose of transporting passengers and allowing passengers to re-board the Vessel from water at the stern of the Vessel where there is no reasonable method of communication from the master of the Vessel or whomever is at the helm to the divemaster or anyone at the aft the Vessel who is awaiting instruction from the master as to when it is safe to re-board the Vessel from the water;

e.      Negligently allowing its on-premises charter partner Defendants FLORIDA SCUBA to provide a Vessel without a reasonable and sufficient number of crew for the purpose of keeping a proper lookout, communicating reasonably and properly from the helm to the aft of the Vessel, communicating to the passengers and directing passengers who are attempting to re-board the Vessel from the that water at the stern of the Vessel;

f.      Negligently allowing its on-premises charter partner Defendants FLORIDA SCUBA  to operate the Vessel and dive charter from its premises without properly selected, hired, trained and monitored captain and crew of the Vessel;

g.      Negligently allowing its on-premises charter partner Defendants FLORIDA SCUBA to operate the Vessel and dive charter without the master and crew being properly trained and proficient in the operation of the subject Vessel for dive charters;

h.      Negligently allowing its on-premises charter partner Defendants FLORIDA SCUBA to operate the Vessel and dive charter without a master and crew with appropriate experience and who were familiar with, experienced with, and who were safe in operating the subject Vessel in this type of operation where the Vessel let passengers re-board the Vessel from the aft of the Vessel;

i.      Negligently allowing its on-premises charter partner Defendants FLORIDA SCUBA to operate the Vessel and dive charter without proper procedures and rules for operating the Vessel, for communicating loudly and clearly from the helm to the aft, and for controlling the activities of passengers, including those attempting to re-board the Vessel from the water at the stern of the Vessel;

j.      Negligently allowing its on-premises charter partner Defendants FLORIDA SCUBA to operate the Vessel and dive charter  without providing safe, reasonable and proper training to the crew and passengers;

k.      Failing to devise and implement a safe, reasonable, and proper plan and method for maneuvering and moving the Vessel around people in the water and/or people attempting to re-board the Vessel, including the Plaintiff and Decedent;

l.      Negligently allowing its on-premises charter partner Defendants FLORIDA SCUBA to operate the Vessel and dive charter without the ability to communicate in a safe, reasonable, and proper plan and method for maneuvering and moving the Vessel around people in the water and/or people attempting to re-board the Vessel, including the Plaintiff and Decedent;

m.      Negligently allowing its on-premises charter partner Defendants FLORIDA SCUBA to operate the Vessel and dive charter without a proper lookout at all times to avoid collision of the Vessel with people in the water and/or people attempting to re-board the Vessel, including the Plaintiff and Decedent;

n.      Negligently allowing its on-premises charter partner Defendants FLORIDA SCUBA to operate the Vessel and dive charter without maintaining a proper lookout by sight and hearing as well as all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and risk of collision of the Vessel and with passengers, including the Plaintiff and Decedent;

o.      Negligently allowing its on-premises charter partner Defendants FLORIDA SCUBA to operate the Vessel and dive charter in an unsafe manner to allow a collision with people in the water and/or people attempting to re-board the Vessel, including the Plaintiff and Decedent;

p.      Negligently allowing its on-premises charter partner Defendants FLORIDA SCUBA to operate the Vessel and dive charter in a negligent manner by reversing the Vessel when people were in the water at the aft of the Vessel attempting to re-board the Vessel;

q.      Negligently allowing its on-premises charter partner Defendants FLORIDA SCUBA to operate the Vessel and dive charter without maintaining a safe, reasonable and proper method of communication by and between the helmsman, crewmembers and passengers attempting to re-board the Vessel from the aft of the Vessel, especially where there was no visibility between the master at the helm, the crew at the aft of the Vessel and the divers in the water;

r.      Negligently allowing its on-premises charter partner Defendants FLORIDA SCUBA to operate the Vessel and dive charter without properly monitoring the

activities and movements of passengers in the water, including the Plaintiff and Decedent;

s.      Negligently allowing its on-premises charter partner Defendants FLORIDA SCUBA to operate the Vessel and dive charter without warning the passengers, including the Plaintiff and Decedent that the helmsman would put the Vessel in reverse as they were at the aft of the Vessel, as instructed, attempting to re-board the Vessel;

t.      Negligently allowing its on-premises charter partner Defendants FLORIDA SCUBA to operate the Vessel and dive charter without providing the necessary and required pre-dive safety briefing;

u.      Negligently allowing its on-premises charter partner Defendants FLORIDA SCUBA to operate the Vessel and dive charter without implementing a safe method of operation which will be reasonable, safe and would prevent dangerous conditions such as the ones in this case;

v.      Negligently allowing its on-premises charter partner Defendants FLORIDA SCUBA to operate the Vessel and dive charter in light of ongoing, recurring, continuous and/or repetitive problem to occur and/or remain which would cause accidents or injuries to divers;

w.      By other acts or omissions to be revealed in the course of discovery.

108.    The negligent conditions were created by the Defendant NPBM, were known to the Defendant NPBM, had existed for a sufficient length of time so that the Defendant NPBM should have known of them; and were a continuous and repetitive problem thus giving notice to the Defendant NPBM.

109.    The actions, conduct, and failures of the Defendants which caused this incident violated Florida Statutes, inland navigation rules incorporated therein, Federal Statutes and Federal Regulation and inland rules of navigation incorporated therein, and the duty of reasonable care under the circumstances under General Maritime Law.  These breaches constitute negligence, negligence *per se* and caused the incident, the injuries and damages suffered by the Plaintiff and the Decedent's death.

110.    As a direct and proximate result of the negligence and carelessness of Defendant NPBM the Decedent was killed while participating in the scuba diving excursion.

111.    As a further direct and proximate result of the above-mentioned negligence of Defendant NPBM that resulted in the death of the Decedent, Plaintiff, the survivor of the Decedent, has suffered harm therefrom, including the loss of the support and services, and the love and affection of his wife; and has suffered mental pain and suffering therefrom. Plaintiff claims all damages specified herein, as well as all damages allowable under Florida's Wrongful Death Act.

112.    The Estate of MOLLIE CATHERINE GHIZ-FLYNN, deceased, claims all damages allowed by Florida's Wrongful Death Act (Florida Statute §768 et. seq.), including, but not limited to monetary support of the deceased, medical and funeral expenses, and loss of services and support.

WHEREFORE, the Plaintiff SEAN THOMAS FLYNN, individually and as Personal Representative of the Estate of MOLLIE CATHERINE GHIZ-FLYNN demands judgment against NPBM, for damages in excess of this Court's minimal jurisdictional limits, as well as post judgment interest as allowed by law, costs and attorney's fees as may be allowed by law.

## COUNT V
## NEGLIGENCE *PER SE*
### (as to NPBM Defendant)

Plaintiff, realleges and readopts paragraphs 1 through 16 as if fully set forth herein and further states as follows:

113.    At all material times, the Defendant NPBM owed, operated, and managed the North Palm Beach Marina.

114.    At all times material, Defendant NPBM advertised, marketed, and represented to the public

that Defendants FLORIDA SCUBA was its "on-premises boat and scuba charter" and its "local charter partners."

115.   At all material times, the Defendants FLORIDA SCUBA operated a diver charter business from the Marina with its partner NPBM.

116.   At all material times, Defendants FLORIDA SCUBA advertised and sold its services for diver charters.  Defendants FLORIDA SCUBA advertised, marketed, and represented that Defendant DUSTIN MCCABE held a Master Rating and Dive Instructor rating from Scuba Diving International ("SDI").

117.   The Vessel was newly acquired by the Defendants FLORIDA SCUBA which was in the process of converting subject Vessel from a fishing boat to a dive boat.  Previously, Defendants FLORIDA SCUBA operated a 30 foot single engine vessel, *Sea Scout*, which was a typical dive boat.

118.   The weekend of March 28-29, 2020 was the inaugural weekend of Defendants FLORIDA SCUBA's use of the Vessel for its dive charters.

119.   On or about March 28, 2020, Defendants FLORIDA SCUBA used the Vessel for its dive charters and experienced major safety problems.  The Vessel experienced mechanical trouble with the engines, and due to his lack of familiarity and experience with the Vessel, Defendant DUSTIN MCCABE had difficulty maneuvering, handling and/or controlling the Vessel.

120.   Due to his inexperience and inability to control the Vessel, on or about March 28, 2020, Defendant DUSTIN MCCABE experienced difficulties retrieving divers from the water placing divers in harm's way and injuring one diver.  When attempting to retrieve one diver from the water, Defendant DUSTIN MCCABE, reversed the Vessel over a diver.  The

diver only managed to escape with her life by pushing her speargun into the turning propellers and pushing herself away.  This diver suffered physical injuries.  A second diver was pulled under the boat towards the propellers.  Ultimately, Defendants FLORIDA SCUBA had to use a rope to pick up the divers.  Then, when returning to the Marina, Defendant DUSTIN MCCABE, was unable to control and maneuver the Vessel into the gas dock and ran it aground, damaging/breaking the rudder.

121.   Divers who experienced the horrors and problems from the March 28, 2020 trip begged Defendants FLORIDA SCUBA not to take the Vessel out again for dive trips until the Vessel was fixed and Defendant DUSTIN MCCABE was better experienced to competently and safely operate the Vessel.

122.   Defendants FLORIDA SCUBA disregarded these warnings and pleas and made the decision to conduct dive charters the following day with Defendant DUSTIN MCCABE at the helm.

123.   On or about March 29, 2020 the Vessel, departed from the Marina for a dive charter with six passengers, including the Plaintiff and the Decedent. The subject charter was only Defendants FLORIDA SCUBA's third dive trip with the Vessel, the first two dives occurring the day before.

124.   At all times material hereto, Defendants FLORIDA SCUBA and DUSTIN MCCABE did not disclose to the divers aboard the Vessel on March 29, 2020 of the problems and dangers divers encountered the previous day on March 28, 2020 when DUSTIN MCCABE operated the Vessel.

125.   On or about March 29, 2020, Defendants FLORIDA SCUBA told the divers that it was not required to provide the USCG pre-dive safety briefing as the Vessel was not a USCG

regulated dive boat.  The required USCG pre-dive safety briefing was not provided.

126.  On or about March 29, 2020, Defendants FLORIDA SCUBA told the divers that when exiting the water they should come directly to the center of the stern because the day before divers were being sucked under the Vessel.

127.  On or about March 29, 2020, Defendants FLORIDA SCUBA and several crewmembers commented that no crewmember would be in the water with the divers and the crew needed to remain on the Vessel to assist divers back onto the boat.   No crewmember entered the water with the divers.

128.  On or about March 29, 2020, the Vessel stopped at an area known as the Breaker's Reef, located approximately 1.5 miles southeast of Lake Worth inlet, to allow divers to enter the water.   At all times material, the Vessel was located and the subject incident occurred in navigable waters off the coast of Palm Beach County, Florida.

129.  On or about March 29, 2020, Plaintiff and Decedent surfaced after completing their first dive.  After making contact with the crew of the Vessel they were waved over to approach the boat.

130.  While knowing that the Plaintiff and Decedent were at the stern attempting to re-board the Vessel, Defendant DUSTIN MCCABE, reversed the gearshift of the Vessel.  Both Plaintiff and Decedent were sucked under the Vessel with Decedent becoming entangled in the moving propellers.

131.  Plaintiff tried in vain but was unable to free the Decedent.  Two individuals from the Vessel jumped in the water to try and pull the Decedent free from the propellers.   Decedent was freed and her body pulled back onto the Vessel.

132.   Plaintiff watched in horror to the futile efforts to save his wife who was declared dead by the time the Vessel returned to the Marina.   Cause of death was determined to be "drowning" with "chop wounds of the lower extremities" as a significant contributing factor.

133.   At all times material, Defendant NPBM owed a duty to exercise reasonable care for the health, welfare and safety of its invitees, guests, and patrons.

134.   The duties imposed on the Defendant NPBM are created by General Maritime Law, by federal and state statutes and regulation and the navigational rules incorporated therein and more fully described below, and by the representations made by the Defendant on its website and in person by which the Defendant NPBM voluntarily understood to assume the responsibility to provide extremely reputable and professional services, including its on-premises charter partner Defendants FLORIDA SCUBA.

135.   At all times material, Defendant NPBM, by and through its employees, servants, agents, and/or representatives acting within the course and scope of their employment, was negligent and breached its duty of care to the Plaintiff and the Decedent by committing the following acts and/or omissions, including, but not limited to:

a.   Failing to comply with applicable standards, statutes, and/or regulations, the violation of which is negligence *per se* and/or evidence of negligence;

b.   Negligently allowing its on-premises charter partner Defendants FLORIDA SCUBA to depart from the Marina for a dive excursion in violation of Palm Beach County Covid-19 Public Safety Order Number 1 (Order no.: 2020-001) which closed "all boat docks, ramps, marinas and other venues utilized for launching any vessel" the violation of which is negligence *per se* and/or evidence of negligence;

c.   Negligently allowing its on-premises charter partner Defendants FLORIDA SCUBA to depart from the Marina for a dive excursion in violation of Amendment to Emergency Order Number 1 Palm Beach Count Covid-19 (Order no.: 2020-001a) closed "all boat docks, ramps, marinas, and other venues utilized for launching any vessels to be used for recreational purposes, including but not limited

to, fishing charters, boat tours, diving excursions, and the like" the violation of which is negligence *per se* and/or evidence of negligence;

d. Negligently allowing its on-premises charter partner Defendants FLORIDA SCUBA to operate dive charters in violation of Florida Statute §327.33(1) by operation of the subject Vessel in a reckless manner and in willful or wanton disregard for the safety of persons or property in a manner as to endanger, or likely to endanger life or limb, or injury of any person, the violation of which is negligence *per se* and/or evidence of negligence;

e. Violating Florida Statute §327.33(2) by failing to operate the subject Vessel within Florida waters in a reasonable and prudent manner, having regard for all attendant circumstances so as to not endanger the life, limb or property of any person, and thus operating the subject Vessel in a reckless manner, the violation of which is negligence *per se* and/or evidence of negligence;

f. Negligently allowing its on-premises charter partner Defendants FLORIDA SCUBA to operate dive charters in violation of Florida Statute §327.33(3) by failing to operate the subject Vessel in Florida waters adhering to the rules of navigation including but not limited to (i) inland and international navigation Rule 5 which provides that "every vessel shall at all times maintain a proper lookout by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and risk of collision; and (ii) inland and navigation rules requiring collision avoidance, the violation of which is negligence *per se* and/or evidence of negligence;

g. Negligently allowing its on-premises charter partner Defendants FLORIDA SCUBA to operate dive charters in violation of 46 U.S.C §2302 (a) and (b) which prohibits the negligent or grossly negligent operation of a vessel so as to endanger lives, which activities include operating a boat in a designated swimming area, excessive speed, and/or hazardous water sport practices, the violation of which is negligence *per se* and/or evidence of negligence;

h. Negligently allowing its on-premises charter partner Defendants FLORIDA SCUBA to operate dive charters in violation of other sections of the Federal Shipping Act, Chapter 46 of the U.S. Code and regulations promulgated thereunder, including but not limit to 46 U.S.C §8104 (watches); 46 U.S.C §3203(safety management system); and/or 46 U.S.C §30102 (liability to passengers); and Federal Regulations, including but not limited to 46 CFR §85.304 (navigation under way) which provides that "the master shall operate the vessel keeping the safety of the passengers and crew foremost in mind by directing the vessel to prevent a casualty, the violation of which is negligence *per se* and/or evidence of negligence;

i. By other acts or omissions to be revealed in the course of discovery.

136. The actions, conduct, and failures of the Defendants which caused this incident violated

Florida Statutes, inland navigation rules incorporated therein, Federal Statutes and Federal Regulation and inland rules of navigation incorporated therein, and the duty of reasonable care under the circumstances under General Maritime Law.  These breaches constitute negligence, negligence *per se* and caused the incident, the injuries and damages suffered by the Plaintiff and the Decedent's death.

137.   Failure to comply with and violation of applicable industry standard, statutes and/or regulations constitutes negligence *per se*.

138.   Failure to comply with applicable industry standard, statutes and/or regulations which involve the Florida Rule and shifts the burden of proof to the Defendants in the proof of negligence or proof of the absence of negligence.

139.   As a direct and proximate result of the negligence *per se* of Defendant NPBM the Decedent was killed while participating in the scuba diving excursion.

140.   As a further direct and proximate result of the above-mentioned negligence of Defendant NPBM that resulted in the death of the Decedent, Plaintiff, the survivor of the Decedent, has suffered harm therefrom, including the loss of the support and services, and love and affection of his wife; and has suffered mental pain and suffering therefrom.  Plaintiff claims all damages specified herein, as well as all damages allowable under Florida's Wrongful Death Act.

141.   The Estate of MOLLIE CATHERINE GHIZ-FLYNN, deceased, claims all damages allowed by Florida's Wrongful Death Act (Florida Statute §768 et. seq.), including, but not limited to monetary support of the deceased, medical and funeral expenses, and loss of services and support.

WHEREFORE, the Plaintiff SEAN THOMAS FLYNN, individually and as Personal Representative of the Estate of MOLLIE CATHERINE GHIZ-FLYNN demands judgment against each Defendant, for damages in excess of this Court's minimal jurisdictional limits, as well as post judgment interest as allowed by law, costs and attorney's fees as may be allowed by law and demands a trial by jury on all issues so triable.

**COUNT VI**
**WRONGFUL DEATH NEGLIGENCE CLAIM**
**(as to Defendants Dustin McCabe Individually)**

Plaintiff, realleges and readopts paragraphs 1 through 16 as if fully set forth herein and further states as follows:

142.  At all times material, the Vessel was owned, operated and captained by Defendant DUSTIN MCCABE.

143.  The Vessel was newly acquired by the Defendant DUSTIN MCCABE who was in the process of converting subject Vessel from a fishing boat to a dive boat.  Previously, Defendant DUSTIN MCCABE operated a 30 foot single engine vessel, *Sea Scout*, which was a typical dive boat.

144.  On or about March 28, 2020, Defendant DUSTIN MCCABE invited guests aboard the Vessel to go scuba diving.  The Vessel experienced major safety problems including mechanical trouble with the engines, and due to his lack of familiarity and experience with the Vessel, Defendant DUSTIN MCCABE had difficulty maneuvering, handling and/or controlling the Vessel.

145.  Due to his inexperience and inability to control the Vessel, on or about March 28, 2020, Defendant DUSTIN MCCABE experienced difficulties retrieving divers from the water placing divers in harm's way and injuring one diver.  When attempting to retrieve one diver

from the water, Defendant DUSTIN MCCABE, reversed the Vessel over a diver. The diver only managed to escape with her life by pushing her speargun into the turning propellers and pushing herself away. This diver suffered physical injuries. A second diver was pulled under the boat towards the propellers. Ultimately, Defendant DUSTIN MCCABE had to use a rope to pick up the divers. Then, when returning to the Marina, Defendant DUSTIN MCCABE, was unable to control and maneuver the Vessel into the gas dock and ran it aground, damaging/breaking the rudder.

146. Guests and/or Divers who experienced the horrors and problems from the March 28, 2020 trip begged Defendant DUSTIN MCCABE not to take the Vessel out again for scuba diving until the Vessel was fixed and Defendant DUSTIN MCCABE was better experienced to competently and safely operate the Vessel.

147. Defendant DUSTIN MCCABE disregarded these warnings and pleas and invited guests, including the Plaintiff and Decedent, to go scuba diving the following day with Defendant DUSTIN MCCABE at the helm.

148. On or about March 29, 2020 the Vessel, departed from Marina for a day of scuba diving.

149. At all times material hereto, Defendant DUSTIN MCCABE did not disclose to the divers aboard the Vessel on March 29, 2020 of the problems and dangers divers encountered the previous day on March 28, 2020 when DUSTIN MCCABE operated the Vessel.

150. On or about March 29, 2020, Defendant DUSTIN MCCABE mentioned to his divers guests that when exiting the water they should come directly to the center of the stern because the day before divers were being sucked under the Vessel.

151. On or about March 29, 2020, the Vessel stopped at an area known as the Breaker's Reef, located approximately 1.5 miles southeast of Lake Worth inlet, to allow divers to enter the

water.   At all times material, the Vessel was located and the subject incident occurred in navigable waters off the coast of Palm Beach County, Florida.

152.   On or about March 29, 2020, Plaintiff and Decedent surfaced after completing their first dive.  After making contact with the Vessel they were waved over to approach the Vessel.

153.   While knowing that the Plaintiff and Decedent were at the stern attempting to re-board the Vessel, Defendant DUSTIN MCCABE, reversed the gearshift of the Vessel.  Both Plaintiff and Decedent were sucked under the Vessel with Decedent becoming entangled in the moving propellers.

154.   Plaintiff tried in vain but was unable to free the Decedent.  Two individuals from the Vessel jumped in the water to try and pull the Decedent free from the propellers.   Decedent was freed and her body pulled back onto the Vessel.

155.   Plaintiff watched in horror to the futile efforts to save his wife who was declared dead by the time the Vessel returned to the Marina.   Cause of death was determined to be "drowning" with "chop wounds of the lower extremities" as a significant contributing factor.

156.   The actions, conduct, and failures of the Defendant DUSTIN MCCABE which caused this incident violated Florida Statutes, inland navigation rules incorporated therein, Federal Statutes and Federal Regulation and inland rules of navigation incorporated therein, and the duty of reasonable care under the circumstances under General Maritime Law.  These breaches constitute negligence, negligence *per se* and caused the incident, the injuries and damages suffered by the Plaintiff and the Decedent's death.

157.   At all times material, Defendant DUSTIN MCCABE, was negligent and breached his duty of care to the Plaintiff and the Decedent by committing the following acts and/or omissions,

including, but not limited to:

a.      Failing to provide a safe dive experience;

b.      Failing to provide a safe means for divers to re-board the Vessel;

c.      Allowing passengers to re-board at the stern of the Vessel from the water where there is no clear line of sight between the helm of the Vessel and aft area of the Vessel where those who seek to re-board the Vessel from water on command of the master are positioned;

d.      Allowing passengers to re-board the Vessel from water at the stern of the Vessel where there is no reasonable method of communication from the master of the Vessel or whomever is at the helm to or anyone at the aft of the Vessel who is awaiting instruction from the master as to when it is safe to re-board the Vessel from the water;

e.      Failing to keep proper lookout and communicate reasonably and properly from the helm to the aft of the Vessel, communicate to divers who are attempting to re-board the Vessel from the water at the stern of the Vessel;

f.      Operating the subject Vessel without being properly trained and proficient in the operation of the subject Vessel;

g.      Failing to have appropriate experience and familiarity with the Vessel so as to operating the subject Vessel in a reasonably safe manner to let divers re-board the Vessel from the aft of the Vessel;

h.      Failing to communicate loudly and clearly from the helm to the aft so as to allow divers to re-board the Vessel from the water at the stern of the Vessel in a reasonably safe manner;

i.      Failing to use safe, reasonable, and proper plan and method for maneuvering and moving the Vessel around people in the water and/or people attempting to re-board the Vessel, including the Plaintiff and Decedent;

j.      Failing to maintain a proper lookout at all times to avoid collision of the Vessel with people in the water and/or people attempting to re-board the Vessel, including the Plaintiff and Decedent;

k.      Failing to maintain a proper lookout by sight and hearing as well as all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and risk of collision of the Vessel and with divers, including the Plaintiff and Decedent;

l.      Failing to operate the Vessel in a safe manner so as to avoid collision with people in the water and/or people attempting to re-board the Vessel, including the Plaintiff and Decedent;

m.      Negligently reversing the Vessel when people were in the water at the aft of the Vessel attempting to re-board the Vessel;

n.      Failing to monitor the activities and movements of divers in the water, including the Plaintiff and Decedent;

o.      Failing to warn divers, including the Plaintiff and Decedent that the helmsman would put the Vessel in reverse as they were at the aft of the Vessel attempting to re-board the Vessel;

p.      Negligently allowing an ongoing, recurring, continuous and/or repetitive problem to occur and/or remain which would cause accidents or injuries to divers;

q.      Failing to maintain the Vessel in a reasonably safe condition;

r.      Failing to comply with applicable standards, statutes, and/or regulations, the violation of which is negligence *per se* and/or evidence of negligence;

s.      Violating Florida Statute §327.33(1) by operation of the subject Vessel in a reckless manner and in willful or wanton disregard for the safety of persons or property in a manner as to endanger, or likely to endanger life or limb, or injury any person, the violation of which is negligence *per se* and/or evidence of negligence;

t.      Violating Florida Statute §327.33(2) by failing to operate the subject Vessel within Florida waters in a reasonable and prudent manner, having regard for all attendant circumstances so as to not endanger the life, limb or property of any person, and thus operating the subject Vessel in a reckless manner, the violation of which is negligence *per se* and/or evidence of negligence;

u.      Violating Florida Statute §327.33(3) by failing to operate the subject Vessel in Florida waters adhering to the rules of navigation including but not limited to (i) inland and international navigation Rule 5 which provides that "every vessel shall at all times maintain a proper lookout by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and risk of collision; and (ii) inland and navigation rules requiring collision avoidance, the violation of which is negligence *per se* and/or evidence of negligence;

v.      Violating 46 U.S.C §2302 (a) and (b) which prohibits the negligent or grossly negligent operation of a vessel so as to endanger lives, which activities include operating a boat in a designated swimming area, excessive speed, and/or hazardous

water sport practices, the violation of which is negligence *per se* and/or evidence of negligence;

w.      Violating other sections of the Federal Shipping Act, Chapter 46 of the U.S. Code and regulations promulgated thereunder, including but not limit to 46 U.S.C §8104 (watches); 46 U.S.C §3203(safety management system); and/or 46 U.S.C §30102 (liability to passengers); and Federal Regulations, including but not limited to 46 CFR §85.304 (navigation under way) which provides that "the master shall operate the vessel keeping the safety of the passengers and crew foremost in mind by directing the vessel to prevent a casualty, the violation of which is negligence *per se* and/or evidence of negligence;

x.      Violating Palm Beach County Covid-19 Public Safety Order Number 1  (Order no.: 2020-001) which closed "all boat docks, ramps, marinas and other venues utilized for launching any vessel" the violation of which is negligence *per se* and/or evidence of negligence;

y.      Violating Amendment to Emergency Order Number 1 Palm Beach Count Covid-19 (Order no.: 2020-001a) closed "all boat docks, ramps, marinas, and other venues utilized for launching any vessels to be used for recreational purposes, including but not limited to, fishing charters, boat tours, diving excursions, and the like" the violation of which is negligence *per se* and/or evidence of negligence;

z.      By other acts or omissions to be revealed in the course of discovery.

158.    The negligent conditions were created by the Defendant DUSTIN MCCABE were known to the Defendant DUSTIN MCCABE, had existed for a sufficient length of time so that the Defendant DUSTIN MCCABE should have known of them; and were a continuous and repetitive problem thus giving notice to the Defendant DUSTIN MCCABE.

159.    The actions, conduct, and failures of the Defendant DUSTIN MCCABE which caused this incident violated Florida Statutes, inland navigation rules incorporated therein, Federal Statutes and Federal Regulation and inland rules of navigation incorporated therein, and the duty of reasonable care under the circumstances under General Maritime Law.  These breaches constitute negligence, negligence *per se* and caused the incident, the injuries and damages suffered by the Plaintiff and the Decedent's death.

160.    As a direct and proximate result of the negligence and carelessness of Defendant DUSTIN
MCCABE the Decedent was killed while participating in the scuba diving excursion.

161.    As a further direct and proximate result of the above-mentioned negligence of Defendant
DUSTIN MCCABE that resulted in the death of the Decedent, Plaintiff, the survivor of the
Decedent, has suffered harm therefrom, including the loss of the support and services, and
love and affection of his wife; and has suffered mental pain and suffering therefrom.
Plaintiff claims all damages specified herein, as well as all damages allowable under
Florida's Wrongful Death Act.

162.    The Estate of MOLLIE CATHERINE GHIZ-FLYNN, deceased, claims all damages
allowed by Florida's Wrongful Death Act (Florida Statute §768 et. seq.), including, but not
limited to monetary support of the deceased, medical and funeral expenses, and loss of
services and support.

WHEREFORE, the Plaintiff SEAN THOMAS FLYNN, individually and as Personal
Representative of the Estate of MOLLIE CATHERINE GHIZ-FLYNN demands judgment against
Defendant DUSTIN MCCABE, for damages in excess of this Court's minimal jurisdictional
limits, as well as post judgment interest as allowed by law, costs and attorney's fees as may be
allowed by law.

**COUNT VII**
**NEGLIGENCT INFLICTION OF EMOTIONAL DISTRESS**
<u>**CLAIM OF SEAN THOMAS FLYNN**</u>
**(as to all Defendants)**

Plaintiff, realleges and readopts paragraphs 1 through 16 as if fully set forth herein and
further states as follows:

163.    At all times material, Plaintiff was in the zone of danger, was directly exposed to and/or
placed in immediate risk of physical harm by the negligent conduct of the Defendants as

set forth in paragraph 25 (a)-(x), 51 (a)-(x), 79 (a) – (i), 108 (a) – (w), 136 (a) – (i) and 158(a) – (z) and incorporated herein.

164.    At all times material, Plaintiff was directly exposed and was forced to witness the horrific death of Decedent as she was sucked under the Vessel and entangled in the propeller.

165.    As a direct and proximate result of the negligence of the Defendants, Plaintiff suffered and feared for his life and sustained emotional distress which has manifested in physical injuries including but not limited to, post-traumatic stress disorder, depression, nightmares, mood and appetite disturbance, emotional and physical injuries, and an inability to stop reliving this event and other physical and medical injuries.

166.    Plaintiff claims damages for negligent infliction of emotional distress and all other elements of damages allowable under law.

WHEREFORE, the Plaintiff SEAN THOMAS FLYNN, individually demands judgment against each Defendant, for damages in excess of this Court's minimal jurisdictional limits, as well as post judgment interest as allowed by law, costs and attorney's fees as may be allowed by law and demands a trial by jury on all issues so triable.

Dated:  September 11, 2020.

LIPCON, MARGULIES,
ALSINA & WINKLEMAN, P.A.
*Counsel for Plaintiff*
One Biscayne Tower, Suite 1776
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone No.: (305) 373-3016
Facsimile No.: (305) 373-6204

By:  */s/ Carol L. Finklehoffe*
MICHAEL A. WINKLEMAN
Florida Bar NO:  36719
Email:  mw@lipcon.com
JASON R. MARGULIES
Florida Bar No.: 0057916

Email: jmargulies@lipcon.com
CAROL L. FINKLEHOFFE
Florida Bar No.: 0015903
Email: cfinklehoffe@lipcon.com

and

COUTURE LAW, P.A.
Counsel for Plaintiff
2930 West New Haven Avenue
West Melbourne, Florida
Telephone No.: (321) 733-5703
Facsimile No.: (321) 733-5702
TARA C. COUTURE
Florida Bar No.: 55572
Email: tara@couturelawoffices.com
BRENT A. COUTURE
Florida Bar No.: 83358
Email: brent@couturelawoffices.com

## <u>VERIFICATION</u>

I, Carol L. Finklehoffe, am authorized by Plaintiff, SEAN THOMAS FLYNN, to make this Verification and representations on his behalf as his attorney of record under Local Admiralty Rule A(5).  At the time of the filing of this Complaint, Plaintiff is not within the District.

1. I am over the age of eighteen and competent to make this Verification.

2. I have read the foregoing Verified Compliant and hereby verify and represent under oath that its contents are true to the best of my knowledge, and/or information and belief.

3. The source of my knowledge is my conversations with  Sean Thomas Flynn and review of documents pertaining to the subject incident and the Defendants.

FURTHER AFFIANT SAYETH NAUGHT.

> */s/ Carol L. Finklehoffe*
> **CAROL L. FINKLEHOFFE**
> Florida Bar No. 0015903
> Attorney of record

**<u>Declaration Under Penalty of Perjury Pursuant to 28 U.S.C. § 1746</u>**

I declare under penalty of perjury that the foregoing verification is true and correct.

Executed on this 11th day of September, 2020.

*/s/ Carol L. Finklehoffe*
**CAROL L. FINKLEHOFFE**
Florida Bar No. 0015903
Attorney of record